IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| JOHN DUNCAN FORDHAM, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 111-088 |
| | ) | (Formerly CR 104-051) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is Petitioner John Duncan Fordham's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[1] For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that the motion be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

I.    **BACKGROUND**

A.    **Criminal Proceedings**

On May 26, 2004, a federal grand jury returned a 30-count indictment against Petitioner and five co-defendants: Charles Michael Brockman, Robin L. Williams,[2] Matthew

---

[1]As an alternative to § 2255 relief, Petitioner seeks a writ of coram nobis in the event that he completes his term of supervised release while this matter is pending. (Doc. no. 1, p. 1; doc. no. 1-2, p. 4.) Because Petitioner has not yet completed his supervised release, the Court need not address this alternative request.

[2]Williams filed a § 2255 motion that was similar to the instant motion in several respects. The Honorable Dudley H. Bowen, Jr., United States District Judge, denied Williams' motion pursuant to a recommendation by this Court on January 12, 2012. See Williams v. United States, CV 110-153, doc. nos. 13, 20 (S.D. Ga. Jan. 12, 2012). Williams

Chad Long, Rick Lamar Camp, and Fordham, Inc., d/b/a Duncan Drugs (hereinafter "Duncan Drugs"). <u>United States v. Williams</u>, CR 104-051, doc. no. 1 (S.D. Ga. May. 26, 2004) (hereinafter "CR 104-051").[3] Count 1 of the indictment charged each defendant with involvement in a conspiracy in violation of 18 U.S.C. § 371, the principle objects of which were: (1) to defraud the Community Mental Health Center of East Central Georgia ("CMHC"), a healthcare benefit program receiving federal funds, of money and property and of the intangible right to honest services, and to obtain money and property from a healthcare benefit program by means of false and fraudulent pretenses, representations, and promises, in violation of 18 U.S.C. §§ 1346-47; and (2) to embezzle, steal, obtain by fraud, and intentionally misapply property of the CMHC, a program receiving federal funds, in violation of 18 U.S.C. § 666. <u>Id.</u> at 1-14.

Petitioner was also named in Count 8, which charged Petitioner, Williams, Brockman, and Duncan Drugs with healthcare fraud in violation of § 1347; in particular, Count 8 stated:

> [Petitioner, Williams, Brockman, and Duncan Drugs], aided and abetted each by the other, did knowingly and willfully devise a scheme and artifice to defraud the [CMHC] and Community Service Board ["CSB"] of money and property and of the intangible right of honest services, and to obtain, by means of false or fraudulent pretenses, representations, and promises, money

---

was granted a certificate of appealability, and he filed a notice of appeal. <u>Id.</u>, doc. nos. 20, 22.

[3]As the result of the dismissal of several counts of the original indictment on the government's motion, a redacted indictment retaining the same count numbers of the original indictment was issued on May 5, 2005; the redacted indictment did not drop any of the counts against Petitioner. <u>See</u> CR 104-051, docket entry for doc. no. 202. As the remaining allegations in the redacted indictment were the same as those in the original indictment, the Court will continue to refer to the original indictment for ease of reference.

and property owned by, and under the custody and control of, the [CMHC], in connection with the delivery of and payment for health care benefits, items and services.

Id. at 20. According to the indictment, in order to carry out their scheme, Williams, a member of the Georgia House of Representatives, and Brockman, the business manager of the CMHC, arranged for the CMHC and CSB to contract with Petitioner and his company, Duncan Drugs, to manage and operate a pharmacy located at the CMHC. See id.

The indictment further charged that Brockman caused the CMHC to pay substantial "incentive awards" to Petitioner and Duncan Drugs. See id. at 20-21. Meanwhile, Petitioner would pay a portion of the money that he received from CMHC to Williams, who in turn gave things of value to Brockman in connection with Brockman's official actions and duties as an officer of the CMHC. Id. at 21. Finally, the indictment alleged that in order to maintain the CSB's approval of the contracts with and payments to Petitioner and Duncan Drugs, Brockman knowingly made false representations to the CSB and others at the CMHC, claiming that the CMHC pharmacy managed by Petitioner was operating at a profit when in truth it was not. Id.

At trial, Judge Bowen granted Petitioner's motion for acquittal as to the Count 1 conspiracy charge.[4] See Tr., pp. 1996-97. The jury found Petitioner guilty as to Count 8, along with the other defendants named in that count.[5] Id. at 2508; doc. no. 206. On

[4]Several other counts against Petitioner's co-defendants were also dismissed, either on motions for acquittal or motions to dismiss by the government. See CR 104-051, doc. nos. 253-255; id., doc. no. 324 (doc. nos. 321-325 hereinafter collectively referred to as "Tr."), pp. 1994-95, 2124.

[5]In addition to Count 8, the jury convicted Williams on all counts in the redacted indictment, including a separate count of theft and several counts of bribery. CR 104-051, doc.

September 15, 2005, Judge Bowen sentenced Petitioner to serve a 52-month term of imprisonment and a three-year term of supervised release, and to pay $1,021,888.00 in restitution. Id., doc. no. 325-1, pp. 150, 153; doc. no. 254. Petitioner filed a direct appeal, in which he argued that the evidence at trial was insufficient to support his conviction and that the District Court erred in denying his motion for severance. On March 12, 2007, the Eleventh Circuit affirmed his conviction. United States v. Williams, 219 F. App'x 963 (11th Cir. 2007) (*per curiam*). Notably, as Petitioner concedes, he did not raise any claim challenging the legal viability of the honest-services charge upon which he was convicted on direct appeal. See id.; doc. no. 1-2, p. 3 (stating that Petitioner did not raise the claim set forth in his § 2255 motion on direct appeal). Petitioner did not file a petition for a writ of certiorari.

**B.    Issues Raised in § 2255 Motion**

On June 15, 2011, Petitioner filed the instant § 2255 motion (doc. no. 1), in which he challenges his conviction in light of the Supreme Court's recent decision in Skilling v. United States, 561 U.S. ___, 130 S. Ct. 2896 (2010). In Skilling, the Supreme Court interpreted the honest-services fraud statute, 18 U.S.C. § 1346 ("Section 1346"), and confined the honest-services fraud theory of liability solely to bribery and kickback schemes. 130 S. Ct. at 2905. The Supreme Court specifically rejected the government's argument in Skilling that Section 1346 criminalizes undisclosed self-dealing. Id. at 2932.

Petitioner contends that "under the United States Supreme Court decision in

no. 204. Brockman was convicted on all counts except for one of the bribery counts, but his convictions were vacated when he died shortly after filing a notice of appeal. See id., doc. nos. 320, 329, 330.

4

[Skilling], the conduct for which [he] was charged was not a crime, in that the provisions of [Section 1346] were overly broad." (Doc. no. 1-2, p. 3.) Petitioner further contends that the payments he made to Williams did not constitute bribes. (See id.) Petitioner also asserts that he never paid money to Brockman or any other CMHC officer and that "[t]here was no evidence or documents showing that [he] or Duncan Drugs ever provided anything but honest services to the CMHC and its pharmacy customers." (Id. at 14.) Thus, according to Petitioner, "[t]he conduct upon which [his] conviction may rest, that is of entering into contracts with the CMHC and receiving money and paying an agent, Mr. Williams, money, is no longer a crime. The jury was erroneously instructed upon the Government's illegal honest services fraud theory." (Id. at 15.)

Respondent contends in its response that Petitioner's § 2255 claim is procedurally defaulted and lacks merit. (See doc. no. 9.) Petitioner has filed a reply brief in which he reasserts that his conviction should be vacated under Skilling and argues that Respondent has taken a position inconsistent with the position it took in a separate case in the Middle District of Georgia, United States v. Blitch, No. 5:08-cr-40-HL, doc. no. 405 (M.D. Ga. Sept. 6, 2011). (See doc. no. 9.) The Court resolves the matter as follows.

## II.    DISCUSSION

The threshold issue in this case is whether Petitioner's Skilling-based § 2255 claim is procedurally defaulted. Respondent argues that it is and that the default cannot be excused because Petitioner cannot show either (1) cause excusing his default and actual prejudice from the error, or (2) that the Court's failure to consider his claims will result in a miscarriage of justice because he is "actually innocent." (See doc. no. 7.)

5

Petitioner counters that "cause exists for . . . not bringing up this issue on appeal because the issues in <u>Skilling</u> . . . had not been addressed by the Supreme Court and were unknown." (Doc. no. 1, p. 2; <u>see also</u> doc. no. 1-2, p. 4 ("[Petitioner] has not procedurally defaulted in not bringing this claim earlier . . . . [because] the legal issues in this case were not known at the time of [his] conviction and appeal.").) Petitioner also asserts that he is actually innocent because the conduct for which he was convicted is no longer prohibited following <u>Skilling</u>. (<u>See</u> doc. no. 1, p. 2; doc. no. 1-2, pp. 4, 14-15.)

As Respondent correctly notes (<u>see</u> doc. no. 7, p. 4), a prisoner seeking collateral relief "must clear a significantly higher hurdle than would exist on direct appeal." <u>United States v. Frady</u>, 456 U.S. 152, 166 (1982). Generally, where a petitioner seeks collateral relief based on trial errors to which no contemporaneous objection was made at trial, <u>id.</u> at 167-68, or on direct appeal, "it will be procedurally barred in a § 2255 challenge." <u>United States v. Montano</u>, 398 F.3d 1276, 1279-80 (11th Cir. 2005) (*per curiam*) (citing <u>Mills v. United States</u>, 36 F.3d 1052, 1055 (11th Cir. 1994)). "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development." <u>Mills</u>, 36 F.3d at 1055. In other words, Petitioner may not use this collateral attack as "a surrogate for a direct appeal." <u>Lynn v. United States</u>, 365 F.3d 1225, 1232 (11th Cir. 2004) (citation omitted).

To overcome a procedural bar or default, the § 2255 movant must "demonstrate a cause for this default and show actual prejudice suffered as a result of the alleged error." <u>Montano</u>, 398 F.3d at 1280.

> In the alternative, a defendant can also overcome the procedural bar created by the failure to appeal if he could [sic] show a fundamental miscarriage of justice; 'in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas

court may grant the writ even in the absence of a showing of cause for the procedural default.'

Id. (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)).

In examining a petitioner's procedural default, courts must not apply "an overly rigid *per se* approach." Holland v. Florida, 560 U.S. ____, 130 S.Ct. 2549, 2565 (2010). That being said, courts must exercise restraint before expanding the exceptions to the procedural default rule. McKay v. United States, 657 F.3d 1190, 1198 (11th Cir. 2011) (citing Dretke v. Haley, 541 U.S. 386, 394 (2004) ("[I]t is precisely because the various exceptions to the procedural default doctrine are judge-made rules that courts as their stewards must exercise restraint, adding to or expanding them only when necessary.")). Societal interests in the finality of criminal judgments further counsel against a permissive scope of collateral review. See, e.g., Gilbert v. United States, 640 F.3d 1293, 1309-12 (11th Cir. 2011) (*en banc*) (explaining that the "critically important nature" of finality interests weigh against permissive interpretations of procedural rules in the habeas corpus context). It is with these principles in mind that the Court turns to Petitioner's motion.

Here, Petitioner does not contend that the merits of his § 2255 claim could not be reviewed on direct appeal without further factual development. Therefore, his claim was "available" withing the meaning of Mills. See 36 F.3d at 1055. Accordingly, the claim is not cognizable unless Petitioner can overcome the procedural bar by establishing cause and prejudice or by showing actual innocence. See Montano, 398 F.3d at 1280. The Court addresses these issues separately below, concluding that Petitioner cannot satisfy either standard.

7

## A.    Cause and Prejudice

### 1.    Petitioner Has Not Established Cause

As noted previously, Petitioner argues that cause excusing his default is established in this case because the Supreme Court issued its holding in <u>Skilling</u> after the time for Petitioner's direct appeal expired; thus, he argues, he had no basis for raising such a novel <u>Skilling</u>-type challenge to Section 1346. (Doc. no. 1, p. 2; doc. no. 1-2, p. 4.)  The Court disagrees.[6]

To establish cause premised on a recent legal development, Petitioner must demonstrate that his claim is "so novel that its legal basis is not reasonably available to counsel." <u>Bousley v. United States</u>, 523 U.S. 614, 622 (1998). "[T]he question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was 'available' at all." <u>Smith v. Murray</u>, 477 U.S. 527, 537 (1986).

Here, Petitioner has not demonstrated cause based on the ruling in <u>Skilling</u>. Despite his argument to the contrary, the vagueness challenge to Section 1346 at issue in <u>Skilling</u> was not a novel claim at the time of Petitioner's direct appeal. In fact, prior to <u>Skilling</u> and Petitioner's direct appeal, the scope of honest-services fraud under Section 1346 had been challenged numerous times in circuit courts across the nation, albeit without much success. <u>See, e.g.</u>, <u>United States v. Rybicki</u>, 354 F.3d 124, 142-43 (2d Cir. 2003) (<i>en banc</i>); <u>United</u>

---

[6]In determining that Petitioner has not established cause, the Court applies the same reasoning adopted by the District Court in finding that Williams had not established cause for procedurally defaulting his <u>Skilling</u>-based § 2255 claim. <u>See</u> <u>Williams</u>, CV 110-153, doc. nos. 13, 20.

8

States v. Welch, 327 F.3d 1081, 1109 n.29 (10th Cir. 2003); United States v. Hasner, 340 F.3d 1261, 1268-69 (11th Cir. 2003); United States v. Easton, 54 F. App'x 242, 244 (8th Cir. 2002) (*per curiam*); United States v. Frost, 125 F.3d 346, 371 (6th Cir. 1997); United States v. Waymer, 55 F.3d 564, 568-69 (11th Cir. 1995). Moreover, Skilling was not heard in isolation; the Supreme Court granted certiorari for two cases that also raised challenges to the scope of Section 1346. Skilling, 130 S.Ct. at 2912 n.9; Black v. United States, No. 08-876, 129 S.Ct. 2379 (2009); Weyhrauch v. United States, No. 08-1196, 129 S. Ct. 2863 (2009). In short, there were numerous vagueness challenges to Section 1346 prior to Petitioner's direct appeal. Thus, Petitioner's contention that a Skilling-type argument was so novel that it was unavailable to him must fail.

Furthermore, the fact that the Eleventh Circuit and other appellate courts had rejected previous vagueness challenges to Section 1346 does not provide cause for Petitioner's default. That an argument appeared likely to fail is insufficient cause to excuse procedural default. Bousley, 523 U.S. at 623 ("futility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'") (quoting Engle v. Isaac, 456 U.S. 107, 130 n.35 (1982)). The majority of courts to consider the issue of futility have similarly held that Bousley bars a Skilling-based claim that was not raised on direct appeal. Ryan v. United States, 645 F.3d 913, 916 (7th Cir. 2011) (Easterbrook, J.) *petition for cert. filed*, No. 11-499 (Oct. 19, 2011); United States v. Lynch, ___ F. Supp.2d ___, Nos. 07-431-01, 07-431-02, 2011 WL 3862842, at *3 (E.D. Pa. Aug. 31, 2011); United States v. Jennings, Nos. CR-04-402, CV-11-150 (RHK), 2011 WL 3609298, at *3 (D. Minn. Aug. 15, 2011) *appeal docketed*, No. 11-3127 (8th Cir. Sept. 30, 2011); United States v.

Scruggs, No. 3:07CR192-B-A, 2011 WL 1832769, at *3 (N.D. Miss. May 13, 2011), *reconsideration denied*, 2011 WL 2566140, at *1 (N.D. Miss. June 28, 2011), *appeal docketed*, No. 11-60564 (5th Cir. Aug. 23, 2011); Walker v. Rivera, ___ F. Supp.2d ___, No. 3:10-2464-RMG, 2011 WL 4480170, at *2 (D.S.C. Sept. 26, 2011), *appeal docketed*, No. 11-7425 (4th Cir. Oct. 27, 2011). But see Stayton v. United States, 766 F. Supp. 2d 1260, 1266-67 (M.D. Ala. 2011); United States v. McDonnell, Nos. SACV 10-1123, SACR 04-0309, 2011 WL 2463194, at *3-5 (C.D. Cal. June 20, 2011).

The Seventh Circuit, the highest court to have considered the issue, held that former Illinois governor George H. Ryan, who had been convicted of honest-services mail fraud and violations of the Racketeer Influenced and Corrupt Organizations Act, failed to show cause to excuse his procedural default because futility is insufficient to establish cause. Ryan, 645 F.3d at 916-17 (citing Bousley, 523 U.S. at 622-23). Moreover, the Seventh Circuit concluded, it would not have been futile for Ryan to make a Skilling-type challenge to Section 1346. To borrow from Ryan, "If [Fordham's] lawyers had done what Skilling's lawyers did, the controlling decision today might be [Fordham] rather than Skilling." Id. at 916. Nothing prevented Petitioner from asserting a similar vagueness challenge to the statute on direct appeal, and his failure to do so bars his claims.

The Court recognizes the existence of a minority position whose adherents have found cause based on the novelty of Skilling-based claims. E.g., Stayton, 766 F. Supp.2d at 1266-67; McDonnell, 2011 WL 2463194, at *3-5. In Stayton, for example, the District Court for the Middle District of Alabama found that the Supreme Court's holding in Skilling was such a "clear break with the past" that it excuses the procedural default of petitioners whose

10

appeals predate <u>Skilling</u>. The court held that "when the state of the law at the time [of appeal] did not offer a reasonable basis upon which to challenge the jury instructions, that constitutes cause for failing to raise the issue at that time." 766 F. Supp.2d at 1266 (quoting <u>Reed v. Ross</u>, 468 U.S. 1, 16-17 (1984)) (internal quotations omitted).

The court in <u>Stayton</u> followed dicta in <u>Reed</u> which stated that there might be no reasonable basis for challenging jury instructions where a Supreme Court decision overturns "a longstanding and widespread practice to which the Supreme Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved." <u>Id.</u> (quoting <u>Reed</u>, 468 U.S. at 17). Finding that <u>Skilling</u> presented such a situation, the district court concluded that this gave the petitioners in that case cause excusing their default. <u>Id.</u> at 1269.

To reconcile its application of <u>Reed</u> with <u>Bousley</u>'s instruction that futility is insufficient to demonstrate cause, the district court explained that <u>Bousley</u> applies where a claim had been rejected by a particular court or circuit, but had not been met with "near-unanimous" rejection by lower courts across the nation. <u>See id.</u> at 1267 n.7. The district court speculated that an overly rigid application of the procedural default rule would spur defendants to raise any conceivable claim on direct appeal to account for the possibility that the claim might one day provide relief on collateral attack following a future Supreme Court decision. <u>Id.</u>; <u>see also</u> <u>McDonnell</u>, 2011 WL 2463194, at *3-5 (finding cause to excuse procedural default under similar reasoning).

The Court declines to follow the reasoning set forth in <u>Stayton</u>. While mindful that an overly rigid application of procedural default rules is improper, <u>Holland</u>,130 S. Ct. at 2563, it is equally important for the Court to show restraint before carving out further

11

exceptions to the procedural default rule. Dretke, 541 U.S. at 394. Here, the Court will not create further exceptions to the procedural default rule where the language in Bousley is clear: futility is insufficient to establish cause. 523 U.S. at 623. Moreover, the Court finds that the concern expressed in Stayton for spurring non-meritorious claims is overstated: Skilling does not present the situation where a new Supreme Court decision has suddenly overturned an unchallenged rule of law. As noted above, Section 1346 had been actively challenged on vagueness grounds during the period leading up to Petitioner's direct appeal and the Supreme Court's decision in Skilling. In other words, concern for judicial economy is premature where litigants and courts continue to grapple with the law at issue.

Furthermore, Eleventh Circuit law counsels in favor of upholding procedural rules in habeas corpus cases despite arguments that claims were novel or futile. See Sawyer v. Holder, 326 F.3d 1363, 1366-67 (11th Cir. 2003) ("Sawyer argues that he can show cause [excusing procedural default] because at the time of his direct appeal and first habeas petition, circuit precedent foreclosed his claim under Richardson. However, the Supreme Court rejected such an argument in Bousley."); see also United States v. Coley, 336 F. App'x 933, 936 (11th Cir. 2009) (per curiam) (finding claim alleging sentencing error was procedurally defaulted irrespective of the fact that it relied on Supreme Court cases not yet decided at the time of appeal); Howard v. United States, 374 F.3d 1068, 1072-73 (11th Cir. 2004) (novelty of claim does not excuse procedural default where type of claim at issue had been brought previously and petitioner could have easily brought it as well). Consistent with the majority approach and the Eleventh Circuit's application of Bousley, the Court concludes that Petitioner has failed to show cause excusing his default.

## 2. Petitioner Has Not Established Actual Prejudice

Petitioner has not shown cause to excuse his procedural default, yet even if he did, Petitioner must also show prejudice. Petitioner contends that he "has been prejudiced, in that he has spent time in jail, has paid hundreds of thousands of dollars, is under supervised release and, while on supervised release, he cannot have his license reinstated." (Doc. no. 1, p. 2.) Petitioner's argument misconstrues the type of prejudice that he must show. That is, the mere existence of a sentence involving imprisonment and supervised release, accompanied by a collateral consequence such as license forfeiture, can hardly suffice to show prejudice. Indeed, courts would be hard-pressed to find a petitioner who was not so prejudiced.

Rather, to demonstrate actual prejudice, a prisoner "must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Frady, 456 U.S. at 170 (emphasis in original). Thus, Petitioner must demonstrate that the reference to the allegedly invalid honest-services theory "in the indictment, the jury instructions, or during trial 'worked to his actual and substantial disadvantage.'" Lomelo v. United States, 891 F.2d 1512, 1513 (11th Cir. 1990) (quoting Frady, 456 U.S. at 170).

The petitioner in Lomelo, who was convicted on several counts of mail fraud and extortion, argued on collateral attack that the Supreme Court's holding in McNally v. United States, 483 U.S. 350 (1987), which removed the intangible right to good government from the scope of the mail fraud statute, rendered his conviction for mail fraud invalid and resulted

13

in "prejudicial spillover" to his convictions for extortion, rendering those convictions invalid as well. Id. In assessing prejudice, the Court of Appeals held that the wording of the indictment on which the conviction was based was a "key consideration" and reasoned that a petitioner cannot show prejudice from an invalid theory in the indictment where the indictment alleges a valid theory in conjunctive fashion. Id. at 1517. In other words, if a valid and invalid theory are alleged using the conjunctive "and" such that a conviction must have required the jury to convict on a valid theory, then there is no prejudice. Furthermore, jury charges must be read as a whole, and should be read in the broader context of allegations in the indictment and at trial.[7] See id. at 1518-19.

Applying these principles, the Court concludes that Petitioner cannot show actual prejudice regarding his health care fraud conviction on Count 8 of the indictment, which charged that:

> [Petitioner, Williams, Brockman, and Duncan Drugs], aided and abetted each by the other, did knowingly and willfully devise a scheme and artifice to defraud the [CMHC] and [CSB] of money and property and of the intangible right of honest services, and to obtain, by means of false or fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, the [CMHC], in connection with the delivery of and payment for health care benefits, items and services.

CR 104-051, doc. no. 1, p. 20. Thus, as Respondent points out, Count 8 of the indictment

---

[7]The Court acknowledges that Congress passed Section 1346 to override the Supreme Court decision in McNally by permitting fraud convictions to be predicated on deprivations of honest services. United States v. Walker, 490 F.3d 1282, 1297 n.16 (11th Cir. 2007) (citing Waymer, 55 F.3d at 568 n.3). Furthermore, while Lomelo reached a contrary conclusion under the cause prong of the cause and prejudice standard, Bousley has clarified the analysis under the cause prong, as explained above. See 523 U.S. at 623; accord Sawyer, 326 F.3d at 1366-67. Despite these shifts in the law, Lomelo's analysis under the prejudice prong remains good law.

charges, in conjunctive fashion, that Petitioner engaged in money and property fraud as well as honest-services fraud. (See doc. no. 7, p. 8.) Accordingly, Petitioner cannot show prejudice from the indictment itself. Lomelo, 891 F.2d at 1517.

The jury instructions on Count 8 provided that Petitioner could be found guilty of healthcare fraud if he:

> knowingly executed or attempted to execute a scheme or plan (a) to defraud a health care benefit program[;] or (b) to deprive a health care benefit program of the intangible right of honest services; or (c) to obtain money, assets, or property of a healthcare benefit services program by means of false or fraudulent pretenses. . . .

CR 104-051, doc. no. 324-5, p. 21.

Although the jury instruction for Count 8 was structured in disjunctive, rather than conjunctive fashion, it must be read in the broader context of all the charges. See Lomelo, 891 F.2d at 1518. In describing the scheme alleged in Count 8, the indictment clarified that Brockman and Williams arranged for the contract with the CMHC pursuant to which Petitioner operated the CMHC pharmacy. It further specified that Brockman caused the CMHC to make significant "incentive payments" to Petitioner, a portion of which he paid to Williams, who in turn would give things of value to Brockman. CR 104-051, doc. no. 1, pp. 20-21. Moreover, based on the same conduct alleged in Count 8, the indictment charged Williams with multiple counts of bribing Brockman, on which he was separately convicted. See id., doc. nos. 1, 204. The jury could not have convicted Williams for conduct on the bribery counts without also finding the same conduct alleged in Count 8. It is therefore evident that the jury convicted Petitioner based on his participation in a scheme involving bribery, contrary to his contention that he may have only been convicted on an improper

15

honest services fraud theory.[8]  Accordingly, in light of the broader context of the indictment and Williams' separate convictions for the same conduct alleged in Count 8, Petitioner cannot show prejudice based on the jury instruction for Count 8.  See Lomelo, 891 F.2d at 1519.

Moreover, while Petitioner may speculate that a jury *could* have found him guilty on Count 8 based solely on an invalid theory of honest-services fraud, the applicable standard demands that he show the alleged errors created more than a *possibility* of prejudice; rather, he must show that they worked to his *actual* and substantial disadvantage.  Frady, 456 U.S. at 170.  Here, Petitioner's only attempt to make this showing involves the aforementioned allegations of being subjected to imprisonment and supervised release.  It is apparent that he has therefore fallen well short of demonstrating actual prejudice.

In sum, Petitioner must show both cause and prejudice to avoid procedural default. Montano, 398 F.3d at 1280.  Here, he has shown neither.  Accordingly, his default is not excused under the cause and prejudice standard.

## B.    Actual Innocence

Although Petitioner has failed to demonstrate cause and prejudice, the Court must still examine whether he can establish actual, factual innocence to save him from default. Petitioner contends that he is actually innocent, arguing that the conduct for which he was convicted is no longer prohibited following Skilling.  (See doc. no. 1, p. 2.)  Petitioner asserts

---

[8]Petitioner's contention that his payments to Williams did not constitute bribes is irrelevant to this determination.  As explained more fully below, Petitioner was neither accused nor convicted of bribing Williams, but rather was convicted of participating in a scheme in which Williams bribed Brockman.  See infra Part II.B.

16

that "[t]here was no evidence or documents showing that [he] or Duncan Drugs ever provided anything but honest services to the CMHC and its pharmacy customers." (Doc. no. 1-2, p. 14.) Petitioner further argues that his payments to Williams do not fit the definition of a bribe, and he emphasizes the fact that he never directly gave money to Brockman "or any officer or employee of the CMHC or the CSB." (Id. at 13-14.) According to Petitioner, as a result, "there can be no scheme involving bribery or kickbacks." (Id. at 14.) Respondent contends that Petitioner has not satisfied the actual innocence standard because he cannot show factual innocence as to the theories charged in Count 8 that remain intact following Skilling. Respondent has the better argument.

To establish actual innocence, Petitioner must demonstrate that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley, 523 U.S. at 623 (quoting Schlup v. Delo, 513 U.S. 298, 327-28 (1995)). The actual innocence exception "is exceedingly narrow in scope," Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001), and requires a petitioner to show "factual innocence, not mere legal insufficiency." Bousley, 523 U.S. at 623. "In addition, 'to be credible, a claim of actual innocence must be based on reliable evidence not presented at trial.'" Johnson, 256 F.3d at 1171 (quoting Calderon v. Thompson, 523 U.S. 538, 559 (1998)). Thus, if Petitioner fails to produce new reliable evidence, then he cannot establish actual innocence if the evidence that *was* presented at trial would permit a properly instructed, reasonable jury to convict him on Count 8. See id.; Ryan, 645 F.3d at 918 ("The right question . . . is whether, applying current legal standards to the trial record, Ryan is entitled to a judgment of acquittal. If yes, then the mail fraud convictions must be vacated; if no, then they stand.").

Petitioner has offered no reliable evidence *not* provided at trial to suggest that he is actually innocent of honest-services fraud under a bribery/kickback theory. Calderon, 523 U.S. at 559. Thus, if a properly instructed jury *could* have convicted Petitioner on Count 8 using the legal standards set by Skilling, then his convictions stand. Ryan, 645 F.3d at 918.

Contrary to Petitioner's assertions, the trial record reveals evidence that would support his conviction on Count 8 for conduct that remains unlawful post-Skilling. For example, as Respondent points out (see doc. no. 7, pp. 8-9), the prosecution presented evidence that Brockman ousted the former CMHC pharmacist, who had been paid $64,000 a month, in order to contract Petitioner and Duncan Drugs to operate the CMHC pharmacy. Tr., pp. 587-90. The contracts provided for Petitioner to receive a monthly management fee ranging from $11,500 to $18,000, on top of which he received "incentive payments," which totaled $975,000 during a single two-year period and only a portion of which were contractually provided for. Id. at 62-66, 533-35 & Gov't Exs. 702-707, 713A. From the money he received from the CMHC, Petitioner paid $357,586 to Williams, who provided Brockman with various things of value in connection with his duties as a CMHC official. Id. at 543-45, 548-51, 1565-69, 1672-1675, 1718 & Gov't Exs. 714A-D, 714H, 714J-L, 714Q, 714S, 714Y, 816. Furthermore, the prosecution presented evidence that Brockman made misrepresentations to the CMHC Board by telling its members that the CMHC pharmacy was profitable and that they were receiving a "free pharmacy," when in fact the pharmacy was losing money. Id. at 2146-48 & Gov't Exs. 737-1, 737-2, 737-26, 737-27.

In short, there is ample evidence upon which a properly instructed jury could convict Petitioner for his part in a scheme involving an honest-services theory premised on bribes

and kickbacks – a theory that remains valid after <u>Skilling</u>. 130 S. Ct. at 2905. Indeed, as noted above, the scheme alleged in Count 8 involved the same conduct for which Williams was convicted on multiple separate counts of bribing Brockman, and Petitioner has not shown any facts to call those bribery convictions into question. See <u>supra</u> Part II.A.2. To borrow again from <u>Ryan</u>, the inference that Petitioner was properly convicted based on his participation in a scheme that involved a valid bribery/kickback theory of honest-services fraud "verges on the inescapable." 645 F.3d at 919.

Furthermore, Count 8 alleged more than healthcare fraud based on the deprivation of honest services; it also alleged that Petitioner engaged in healthcare fraud under 18 U.S.C. § 1347 by devising a scheme to obtain money and property of the CMHC "by means of false or fraudulent pretenses, representations, and promises." CR 104-051, doc. no. 1, p. 20. To establish actual innocence, Petitioner would need to establish not only that he was actually innocent of participating in a scheme to defraud the CMHC of Brockman's honest services, but also that he was actually innocent of participating in a scheme to defraud the CHMC of money and property. See <u>Skilling</u>, 130 S. Ct. at 2934 (stating that Skilling's conspiracy conviction based on an invalid honest-services theory and separate, valid theories are subject to harmless error analysis on direct appeal). Petitioner has not even attempted to make this showing – nor could he.

Petitioner's arguments are insufficient to justify application of the narrow actual innocence exception. For example, Petitioner misses the mark with his assertion that there is no evidence that he provided anything but honest services to the CMHC and its pharmacy customers. (See doc. no. 1-2, p. 14.) As Respondent is quick to point out, the prosecution

never alleged that the CMHC was deprived of the honest services of Petitioner or Williams; rather, it alleged, and proved at trial, that Petitioner, Brockman, and Williams, aiding and abetting each other, participated in a scheme to defraud the CMHC of the honest services of its manager, Brockman. (See doc. no. 7, pp. 11-12.) Petitioner is similarly off-base in contending that his payments to Williams did not constitute bribes. (See doc. no. 1-2, pp. 13-14.) Petitioner fails to point to any instance in which the prosecution alleged or attempted to prove that his payments to Williams constituted bribes. What the prosecution alleged in Count 8 and proved at trial was that Petitioner participated in a scheme in which Williams bribed Brockman; as noted previously, Williams was separately convicted of bribery as a result of his improper transactions with Brockman.[9]

In sum, Petitioner has failed to show that a properly instructed jury could not have convicted him on Count 8 for conduct that remains unlawful after Skilling. Therefore, the Court finds that he has not demonstrated actual innocence. Because Petitioner's claim in his § 2255 motion is procedurally defaulted and he has provided no basis for excusing the default, his § 2255 motion should be **DENIED**.

## C.    Allegation Regarding Respondent's Position in Other Cases

Finally, before concluding, the Court will briefly address Petitioner's assertion in his reply that Respondent's position in this case "is somewhat different" from the position taken in Blitch, No. 5:08-cr-40-HL, doc. no. 405, a separate § 2255 case in which the respondent

---

[9]Conspicuously absent from Petitioner's argument is any legal analysis as to whether his payments to Williams amounted to impermissible kickbacks. While the Court need not make any determinative findings on this issue, it notes that the payments were characterized as kickbacks during the government's closing argument and at sentencing. See CR 104-051, doc. no. 325-1, pp. 17-18; Tr., p. 2432.

conceded that the petitioner's honest services fraud conviction should be vacated without raising the issue of procedural default. (See doc. no. p. 2.) First, Petitioner makes no attempt to explain the relevance of this assertion; nor does he provide any legal authority in support of his apparent request for this Court to police the consistency of the positions taken in § 2255 cases in other districts. Furthermore, Blitch is plainly incongruous with the instant case, as it involved a conviction based solely on a legal theory rejected by Skilling, indicating that "a constitutional violation ha[d] probably resulted in the conviction of one who is actually innocent." Montano, 398 F.3d at 1280. Here, in contrast, Petitioner's conviction on Count 8 involved conduct that remained unlawful following Skilling, as explained above. Therefore, the Court rejects Petitioner's attempt to analogize his case to Blitch.[10]

## III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the instant § 2255 motion be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED on this 24th day of January, 2012, at Augusta, Georgia.

_____
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[10]Additionally, the Court notes that procedural default is an affirmative defense, which will be waived if the government fails to raise it. Howard v. United States, 374 F.3d 1068, 1070 (11th Cir. 2004). Thus, even if Respondent should have raised a procedural default argument in another case involving Skilling-based claims, but failed to, the Court does not agree that Respondent should be prohibited from asserting the defense here.

21